IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| **SHANEEQUA CARRINGTON** and **KASCEY CASTILLO**, individually, and on behalf of all others similarly situated, | COLLECTIVE AND CLASS ACTION |
| | Case No.: 6:23-cv-1708-WWB-EJK |
| Plaintiffs, | |
| | J. Wendy W. Berger |
| v. | |
| | M. J. Embry J. Kidd |
| **ACTIVUS CONNECT LLC**, | |
| Defendant. | |

## PLAINTIFFS' PRE-DISCOVERY MOTION FOR CONDITIONAL COLLECTIVE CERTIFICATION AND COURT-AUTHORIZED NOTICE TO POTENTIAL OPT-IN PLAINTIFFS PURSUANT TO 29 U.S.C. § 216(b)

Plaintiffs, Shaneequa Carrington and Kascey Castillo, and Opt-In Plaintiff Timothy Cole, individually and on behalf of all others similarly situated ("Plaintiffs"), hereby move under Section 16(b) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), for court-authorized notice of this lawsuit to all similarly situated employees. Plaintiffs respectfully request that the Court enter an order:

(1) Conditionally certifying the proposed FLSA Collective;

(2) Requiring Defendant to identify all putative collective members by providing a list of their names, last known addresses, dates and location of employment, phone numbers, and email addresses in electronic and importable format within ten (10) days of the entry of the order;

(3) Authorizing Plaintiffs' proposed form of notice (**Exhibits A** & **B**) and implementing a procedure whereby the notice of Plaintiffs' FLSA claims is sent (via U.S. Mail, email, and text message) to:

*All current and former hourly call center agents who worked for Defendant at any time during the last three years* (the "FLSA Collective").

(4) Appointing the undersigned counsel as counsel for the FLSA Collective; and

(5) Giving members of the FLSA Collective sixty (60) days to join this case, measured from the date the Court-authorized notice is sent, with one reminder email sent thirty (30) days thereafter to anyone who did not respond.

The facts and legal authorities in support of this Motion are in the attached Memorandum of Law in Support, which is incorporated by reference.

Dated: December 13, 2024                                Respectfully Submitted,

*/s/ Jason J. Thompson*
Jason J. Thompson (admitted pro hac vice)
Albert J. Asciutto (admitted pro hac vice)
SOMMERS SCHWARTZ, P.C.
One Towne Square, 17th Floor
Southfield, Michigan 48076
Phone: (248) 355-0300
Email: jthompson@sommerspc.com
Email: aasciutto@sommerspc.com

Bradley W. Butcher, Esq.
BUTCHER & ASSOCIATES
6830 Porto Fino Circle, Suite 2
Fort Meyers, Florida 33912
(239) 322-1615
bwb@b-a-law.com

*Attorneys for Plaintiffs, the FLSA Collective, and the Putative Class*

### LOCAL RULE 3.01(g) Certification

I certify that on December 12, 2024, I conferred with the opposing party via e-mail communication and sought concurrence regarding the relief requested herein, however, such concurrence was not obtained.

*/s/ Jason J. Thompson*
Jason J. Thompson

2

## <u>CERTIFICATE OF SERVICE</u>

I certify that on December 13, 2024, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send notification of such filing to all counsel of record.

*<u>/s/ Jason J. Thompson</u>*
Jason J. Thompson

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| **SHANEEQUA CARRINGTON** and **KASCEY CASTILLO**, individually, and on behalf of all others similarly situated, | COLLECTIVE AND CLASS ACTION |
| | Case No.: 6:23-cv-1708-WWB-EJK |
| Plaintiffs, | |
| v. | J. Wendy W. Berger |
| | M. J. Embry J. Kidd |
| **ACTIVUS CONNECT LLC**, | |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' PRE-DISCOVERY MOTION FOR CONDITIONAL COLLECTIVE CERTIFICATION AND COURT-AUTHORIZED NOTICE TO POTENTIAL OPT-IN PLAINTIFFS PURSUANT TO 29 U.S.C. § 216(b)**

## I.    __INTRODUCTION__

Plaintiffs, Shaneequa Carrington and Kascey Castillo, and Opt-In Plaintiff Timothy Cole, bring this lawsuit individually and on behalf of all others similarly situated ("Plaintiffs") against Defendant Activus Connect LLC ("Activus" or "Defendant") challenging its willful violations of the FLSA. More specifically, Plaintiffs allege that Defendant willfully violated the FLSA by knowingly suffering or permitting Plaintiffs to perform unpaid work before their scheduled shifts, but failing to pay these employees the federally mandated overtime compensation.

Plaintiffs Carrington and Castillo have already been joined by opt-in Plaintiff Cole, and believe more workers would participate if they were made aware of the lawsuit. Congress and the Supreme Court explicitly authorized employees to pursue FLSA claims on a collective basis through the opt-in procedure set forth in 29 U.S.C § 216(b). *See Hoffman-La Roche v. Sperling*, 493 U.S. 165, 170 (1989) ("A collective action allows . . . plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged ... activity").  Pursuant to 29 U.S.C. § 216(b), Plaintiffs seek conditional certification of their FLSA claims on behalf of the following employee collective:

> *All current and former hourly call center agents who worked for Defendant at any time during the last three years* (the "FLSA Collective").

In accordance with these public policies, Plaintiffs hereby move for an order: (1) conditionally certifying the proposed FLSA Collective; (2) requiring Defendant to identify all putative collective members by providing a list of their names, last known addresses, dates and location of employment, phone numbers, and email addresses in electronic

1

and importable format within ten (10) days of the entry of the order; (3) permitting Court-authorized notice of this action (*see* **Exs. A-B**, Proposed Notice and Consent Forms and Text Message Notice) to be sent via U.S. Mail, e-mail, and text message; (4) appointing the undersigned as counsel for the FLSA Collective; and (5) giving members of the FLSA Collective sixty (60) days to join this case, measured from the date the Court-approved Notice is sent, with one reminder email sent thirty (30) days thereafter to anyone who did not respond.

## II.   RELEVANT FACTS

### A.   Parties and the Putative Collective

#### 1.   *Defendant*

Defendant is a "Customer Experience Outsourcing" company that utilizes "Activus Connect Ambassadors in 48 states and Puerto Rico" to create "positive customer service experiences across a variety of digital and real-world channels."[1] (Doc. 1, ¶ 24). To facilitate its business operations, Defendant employs hundreds of hourly, non-exempt customer service agents under various job titles, such as Activus Connect Ambassadors, Customer Service Ambassadors, Trust and Safety Moderators, Call Center Ambassadors, or similar positions (hereinafter collectively referred to as "Agents"), who work remotely from their homes, providing customer, claims, and other support to Defendant's customers throughout the United States. (*Id.* at ¶¶ 2, 24, 27-28; **Ex. C**, Shaneequa Carrington Declaration at ¶ 3; **Ex. D**, Kascey Castillo Declaration at ¶ 3; **Ex. E**, Timothy Cole Declaration at ¶ 3; **Exhibit F**, Defendant's Job Descriptions). Upon information and belief, Defendant has employed several hundred Agents, including

---

[1] *See* https://activusconnect.com (Last visited on December 7, 2024).

Plaintiffs, within the past three years across the United States to assist its customers with customer service needs. (Doc. 1, ¶ 29).

### 2. *Named Plaintiffs, Opt-in Plaintiff, and the Putative FLSA Collective*

Named Plaintiff Shaneequa Carrington has worked for Defendant as a remote hourly Agent since approximately August 2022, and is paid an hourly wage, most recently at $15.25. (Doc 1, ¶ 22; **Ex. C**, ¶¶ 1, 4). Named Plaintiff Kascey Castillo worked for Defendant as a remote hourly Agent from approximately December 2022 to April 2023 and was paid an hourly wage, most recently at $16. (Doc 1, ¶ 22; **Ex. C**, ¶¶ 1, 4). Opt-in Plaintiff Timothy Cole worked for Defendant as a remote hourly Agent from approximately November 2021 until April 2024; Mr. Cole was paid an hourly wage, most recently at $15.25. (**Ex. D**, ¶¶ 1, 4).

As Agents working for Defendant, Plaintiffs had rigid schedules that required them to work at least eight (8) hours per day (with a thirty (30) minute unpaid meal period), on average five (5) days each week, and up to forty (40) hours or more in a workweek. (*See* Doc. 1, ¶¶ 6, 32, 62; *see also* **Exs. C – E**, ¶¶ 4, 13). Defendant's Agents were responsible for, among other things: (a) booting up their computers and logging into essential computer software programs and applications *before* taking customer queries; (b) providing customer service to Defendant's clients' customers; (c) ensuring that every live call/complaint is accounted for and responded to in a timely fashion; (d) conducting research utilizing available resources; and (e) documenting pertinent information. (Doc. 1, ¶¶ 3, 4, 34-35, 37, 47-50; *see also* **Exs. C – E**, ¶¶ 5-6, 7-8; *see generally* **Ex. F**).

Throughout their time as Agents for Defendant, Plaintiffs were assigned to several different call projects, for example retention, telemarketing, escalation, etc. (*See e.g.,*

Exs. **C** – **E**, ¶¶ 3, 6). Defendant's unlawful pay policies and timekeeping practices, as well as the nature of Plaintiffs' job duties as Agents, were substantially the same irrespective of the project to which they were assigned. (Doc. 1, ¶¶ 2-3, 35-39; *see generally* **Exs. C** – **F**). Likewise, the nature of the computer software programs and applications Plaintiffs utilized, as well as the fact that off-the-clock work was performed while booting up their computers and loading and logging into the computer software programs and applications, did not materially vary across projects. (Doc. 1 at ¶¶ 3-4, 35-39; *see generally* **Exs. C** – **F**).

    B.   <u>All of Defendant's Agents Were Subjected to Similar Unlawful Policies and Practices and Were Trained to Work Off-the-Clock</u>

Like countless other customer service employers, Defendant maintained a common policy and practice of depriving its Agents of pay for all hours worked. (Doc. 1, ¶¶ 1-7, 10-12, 27-63; *see generally* **Exs. C** – **E**). Defendant's policy and practice was achieved through, among other means, the training Defendant provided to its Agents and the timekeeping application Defendant's required Agents to use. (Doc. 1, ¶¶ 4-7, 34-44).

For example, Defendant provided *all* Agents with training on how to carry out their day-to-day job duties, including how to load and log into their computer programs at the beginning of the day. (**Exs. C** – **E**, ¶ 5). Defendant also taught its Agents how to open and use Defendant's computer networks and software programs/applications, how to track their time, the importance of attendance and schedule expectations, and Defendant's policies related to each topic. (**Exs. C** – **E**, ¶¶ 5-14). Defendant's Agents were trained to record the hours they worked using a uniform web-based timekeeping system. (**Exs. C** – **E**, ¶¶ 5, 7, 9, 14).

Once training was completed, Defendant required its Agents to follow daily

4

computer login procedures. (Doc. 1, ¶¶ 49-55; **Exs. C – E**, ¶¶ 7-10). Defendant's Agents, including Plaintiffs, were trained or instructed not to clock in until they had loaded all of their essential work-related computer programs so they could be prepared to take calls/field customer queries the moment they begin their shift. (Doc. 1, ¶ 54; **Exs. C – E**, ¶¶ 7-15). In other words, Defendant prohibited its Agents from clocking in until they were "phone ready." *Id.* Because Defendant required its Agents to perform pre-shift off-the-clock work, the hours tracked in Defendant's timekeeping system were inaccurate representations of the total amount of time Agents spent working for Defendant. (Doc. 1, ¶ 42). Thus, the hours reflected on the Agents' paystubs were also inaccurate representations of the hours they worked.

The DOL recognizes that call center jobs, like those held by Defendant's Agents, are homogenous, and it issued Fact Sheet #64 in July 2008 to alert call center employees to some of the abuses prevalent in the industry.[2] One of those abuses, which is at issue in this case, is the employer's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." *Id.* Specifically, Fact Sheet #64 condemns an employer's non-payment of an employee's necessary pre-shift activities: "An example of the first principal activity of the day for agents/specialists /representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails." *Id.* The FLSA also requires "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities [] be kept." *Id.*

---

[2] *See* DOL Fact Sheet #64: Call Centers under the Fair Labor Standards Act (FLSA), *https://www.dol.gov/whd/regs/compliance/whdfs64.pdf* (last visited Apr. 25, 2022).

**C.**    **Defendant Maintained an Unlawful Policy and Practice of Failing to Pay its Agents for Necessary Pre-Shift Work**

*1.* ***Pre-Shift Off-the-Clock Work***

Pursuant to Defendant's policies, training and direction, Defendant's Agents were required to start up/log into/open various computer and software programs, servers, applications, scripts, such as Google Chrome, Slack, Launcher, VM Ware, Vizzon, CRM, STC, Paychex, and other project-specific programs, in order to perform their jobs and assist Defendant's client's customers.  (Doc. 1, ¶¶ 3-4, 49-51; **Ex. C**, ¶ 7; **Ex. D**, ¶ 7; **Ex. E**, ¶ 7). The pre-shift startup and login process took substantial time on a daily basis, ranging from ten (10) to fifteen (15) minutes per shift. (Doc. 1, ¶ 51; **Ex. C**, ¶ 10; **Ex. D**, ¶ 10; **Ex. E**, ¶ 10). Further, this mandatory boot-up and login process was performed *before* the Agents' scheduled shifts, as Defendant expressly instructed and trained its Agents to have all of their computer networks, software programs and applications open and ready at the start of their shifts to ensure they were prepared to field customer inquiries (i.e., were "phone ready") the moment their shifts began. (Doc. 1, ¶¶ 54-60; **Ex. C**, ¶¶ 9-10, 11-15; **Ex. D**, ¶¶ 9-10, 11-15; **Ex. E**, ¶¶ 9-10, 11-15).

Contrary to Defendant's unlawful pay polices, the time Agents spent booting up and logging into the aforementioned programs, applications, systems, and scripts before their shifts was compensable because they were an integral, indispensable, and important part of the Agent's work, and they could not perform their jobs effectively without them. (Doc. 1, ¶ 36; **Ex. C**, ¶¶ 5-6, 7-8; **Ex. D**, ¶¶ 5-6, 7-8; **Ex. E**, ¶¶ 5-6, 7-8; *see also Garcia v. Vertical Screen, Inc.*, No. CV 18-4718, 2022 WL 125906, at *4 (E.D. Pa. Jan. 13, 2022) (time employees spend booting up their computers and necessary software is compensable under the FLSA); *Peterson v. Nelnet Diversified Sols., LLC*, 15 F.4th 1033,

1041-42 (10th Cir. 2021) (holding that call center employees "make consistent use of the computer and its programs to perform their work" and because the employer "could not have eliminated these activities without impairing the employees' ability to complete their work," all the steps to boot up their computer, work-related programs, and timekeeping software was integral and indispensable to their work and therefore compensable); *Wilson v. Peckham*, No. 1:20-cv-565, 2021 WL 3168616, at *5 (W.D. Mich. July 26, 2021) (time spent logging into computer programs at the beginning of a shift could be compensable as "the boot up and login process ... is akin to preparing a tool that the employee must use throughout the workday, like sharpening a knife"); *Jackson v. ThinkDirect Mktg. Grp., Inc.*, No. 16-cv-03449, 2019 WL 8277236, at *4 (N.D. Ga.) (explaining that "requirement of logging in and out of electronics systems needed to process calls is at least integral to the work of answering phone calls")).

### D.    Defendant's FLSA Violations Are Widespread and Affected All Agents

Plaintiffs and all Agents worked for Defendant and were subject to the same unlawful pay practices outlined herein. Plaintiffs and Agents did not receive compensation for the essential pre-shift work duties described herein, were not compensated for all hours worked, where applicable, were denied overtime wages at the rate of time-and-a-half for time worked in excess of forty (40) hours per week. (*See generally*, Plaintiffs' Declarations). Defendant's off-the-clock work requirements and overtime compensation deficiencies were common pay practices applicable to every Agent, and Plaintiffs' sworn declarations provide *prima facie* evidence that Court-authorized notice is warranted. In light of the multitude of violations articulated above, and the detailed declarations

7

submitted herewith, Plaintiffs easily satisfy the lenient burden applicable to pre-discovery certification motions in this Circuit.

### III.   <u>LAW AND ARGUMENT</u>

#### A.   <u>The FLSA Authorizes Collective Actions and Notice to Similarly Situated Employees</u>

The FLSA requires employers to pay employees overtime compensation at 1.5 times the regular rates at which they are employed for hours worked in excess of forty (40) hours in a week. 29 U.S.C. § 207(a). An employer who violates this requirement can be sued by the affected employees collectively. 29 U.S.C. § 216(b). In order to participate in such a collective action, each aggrieved employee must file a written consent. *Id.* Until an employee files such a consent, the statute of limitations on his or her FLSA claim continues to run. *Id.*

The FLSA is silent on whether or how other similarly situated persons should be notified of the pendency of a collective action so that they might "opt in." In *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 173 (1989), the Supreme Court held that courts have discretion to implement the collective action procedure by facilitating notice to potential class members.[3] Commenting favorably upon collective actions, the Court noted:

> A collective action allows … plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged … activity. These benefits, however, depend

---

[3] Although *Hoffman-LaRoche* is an Age Discrimination in Employment Act (ADEA) case, its analysis is applicable to FLSA cases because the ADEA incorporates the FLSA collective action provisions. *Mooney v. Aramco Servs. Co*, 54 F.3d 1207, 1212 (5th Cir. 1995); *Hoffman v. Sbarro, Inc.*, 982 F. Supp. 249, 261 n.15 (S.D.N.Y. 1997) ("[I]n *Hoffman-LaRoche*, the Supreme Court construed § 216(b) on its own terms, and its analysis applies with equal force to FLSA cases.").

> on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate.

*Id.* at 170. Conversely, failure to provide prompt notice frustrates the FLSA's broad remedial purposes and its specific grant of collective action rights to employees. *See Fisher v. Michigan Bell Telephone Co.*, 665 F. Supp. 2d 819, 828-29 (E.D. Mich. 2009); *Jackson v. New York Tel. Co.*, 163 F.R.D. 429, 431 (S.D.N.Y. 1995).

### B.  The Eleventh Circuit Has Consistently Approved the Use of the "Fairly Lenient Standard" When Authorizing Notice to Employees

Federal courts, including those in the Eleventh Circuit, typically follow the "two-stage class certification" process set forth in *Lusardi v. Xerox Copy*, 118 F.R.D. 351 (D.N.J. 1987) for determining whether all plaintiffs are similarly situated. *See Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1218 (11th Cir. 2001); *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1260 (11th Cir. 2008); *Cameron-Grant v. Maxim Healthcare Servs. Inc.*, 347 F.3d 1240, 1243 n. 2 (11th Cir. 2003) ("Since *Hipp,* the district courts in our circuit have utilized the two-tiered approach.").

### 1.  *Stage One: Conditional Certification*

The first stage, often called the "notice" stage, takes place before discovery and its purpose is to provide notice to potential plaintiffs and present them with the opportunity to opt into the pending case. *See Ide v. Neighborhood Rest. Partners, LLC*, Case No. 13-cv-509 (N.D. Ga.) (J. Cohen) (Dkt. 68, p. 10 n.4) ("conditional certification is generally determined before the discovery period …").

### a.  *Plaintiffs Bear a Light Burden of Proof*

Because the conditional certification decision is generally made prior to discovery, the plaintiff's evidentiary burden is "fairly lenient" and typically results in "'conditional

certification' of a representative class." *See Morgan*, 551 F.3d at 1260-61 (quoting cases in which the notice-stage standard was described as "not particularly stringent," "fairly lenient," "not heavy," and "less stringent than that for joinder under Rule 20(a) or for separate trials under 42(b)") (internal citations omitted); *see also Diggs v. Ovation Credit Services, Inc.*, 2019 WL 4673813, at *4 (M.D. Fla. Sept. 25, 2019) (citing *Hipp*, 252 F.3d at 1218).

At this stage, this Court determines: whether (1) employees sought to be included in the putative class are similarly situated with respect to their job requirements and pay provisions; and (2) there are other employees who wish to opt-in to the action. *Dybach v. Florida Dep't of Corrections,* 942 F.2d 1562, 1567-68 (11th Cir. 1991). The meaning of "similarly situated" is not defined in the FLSA, and the Eleventh Circuit has given courts only general guidance stating that the similarly situated requirement is "more elastic and less stringent than the requirements found in Rule 20 (joinder) and Rule 42 (severance)." *Grayson v. Kmart Corp*, 79 F.3d 1086, 1095 (11th Cir. 1996).

There are countless examples of district courts in this Circuit (including this Court) applying the fairly lenient standard. *See Chen v. Wow Rest. TH, LLC*, 2023 WL 3976005, at *3 (M.D. Fla. June 13, 2023); *O'Day v. Inv. at Lake Diamond, LLC*, No. 5:23-CV-59-GAP-PRL, 2023 WL 3456926, at *2 (M.D. Fla. Apr. 21, 2023), report and recommendation adopted, No. 5:23-CV-59-GAP-PRL, 2023 WL 3453549 (M.D. Fla. May 15, 2023); *Todd v. Daewon Am., Inc.*, No. 3:11CV1077-MHT, 2013 WL 557859, at *3 (M.D. Ala. Feb. 13, 2013), <u>amended,</u> No. 3:11CV1077-MHT, 2013 WL 1163431 (M.D. Ala. Mar. 20, 2013) (Thompson, J.) ("Because discovery has not yet begun and the record is still undeveloped, the standard for finding similarity is 'fairly lenient.'"); *Troxel v. Gunite Pros,*

*LLC*, No. 21-0057-WS-N, 2022 WL 37525, at *2 (S.D. Ala. Jan. 4, 2022) (Steele, J.); *McMurray v. Formel D*, No. 2:19-CV-548-KOB, 2019 WL 8015556 (N.D. Ala. Oct. 10, 2019) (Bowdre, J.); *Aiuto v. Publix Super Markets, Inc.*, No. 1:19-CV-04803-LMM, 2020 WL 2039946 (N.D. Ga. Apr. 9, 2020) (May, J.); *Izquidero v. Solar Bear Services, Inc.*, 2017 WL 606347 (S.D. Fla. Feb. 15, 2017) (Gayles, J.); *Caamano v. 7 Call Center Inc.*, 2016 WL 4704934 (S.D. Fla. Sept. 8, 2016) (Gales, J.); *Collado v. J. & G. Transp., Inc.*, 2014 WL 5390569 (S.D. Fla. Oct. 23, 2014) (Goodman, J.); *Pares v. Kendall Lakes Auto., LLC*, 2013 WL 3279803 (S.D. Fla. June 27, 2013) (Moreno, J.) (declining to resolve factual issues or rule on the merits in finding that plaintiffs were similarly situated); *Montes de Oca v. Gus Machado Ford of Kendall, LLC.*, 2011 WL 13223702, at *3 (S.D. Fla. Apr. 18, 2011) (Torres, J.) ("At the second stage, the court will have much more information on which to base a determination of whether a claimant is similarly situated…"); *Henderson v. Holiday CVS, LLC*, 2010 WL 1854111, at *3 (S.D. Fla. May 11, 2010) (Marra, J.) (noting that a "fact finding determination on the merits" is inappropriate at this stage).

A lower evidentiary burden at this stage serves the FLSA's remedial purpose and court holdings that the § 216(b) similarly situated requirement must be interpreted generously to permit workers to collectively pursue their FLSA claims. *See, e.g., Hipp*, 252 F.3d at 1214 (11th Cir. 2001) ("We conclude the similarly situated requirement is not particularly stringent[.]"); *Jackson*, 163 F.R.D. at 431 (imposition of a rigorous inquiry would undermine "the importance of early judicial management to assure efficient resolution of similar claims."); *Garner v. G.D. Searle Pharm. & Co.*, 802 F. Supp. 418, 422 (M.D. Ala. 1991) (Thompson, J.) (rigorous inquiry into § 216(b)'s similarly situated

requirement "would unnecessarily hinder the development of collective actions and would undermine the 'broad remedial goals' of the antidiscrimination provisions of the FLSA.") (*quoting Hoffman-LaRoche*, 493 U.S. at 173).

The focus of the Court's inquiry at this stage is not on whether there has been an actual violation of law, but on whether the proposed plaintiffs are similarly situated with respect to their allegations that the law has been violated. *Kreher v. City of Atlanta, Ga.*, 2006 WL 739572, at *4 (N.D. Ga., Mar. 20, 2006) (stating that plaintiffs are not required to submit evidence of a highly particularized nature and finding that "[a]lthough lacking some detail, Plaintiffs' declarations establish the existence of other employees employed in similar positions and subjected to similar policies."). The Court generally makes its decision based on the pleadings and any submitted affidavits. *Lara v. G & E Fla. Contractors, LLC*, 2015 WL 4760678, at *2 (S.D. Fla. July 21, 2015) (citing *Grayson*, 79 F.3d at 1097).

This motion has been filed pre-discovery. Accordingly, this matter is currently at the "notice stage" and the lenient burden of proof applies.

### b. Evidence Typically Accepted to Meet the "Similarly Situated" Standard

At the "notice" stage, plaintiffs may show *either* (1) that their job positions and duties are similar to those positions held by the putative class members, *see Hipp,* 252 F.3d at 1217; *Grayson,* 79 F.3d at 1096, *or* (2) that plaintiffs and the putative class members were all subject to the same unified policy, plan, or scheme that forms the basis of the alleged FLSA violation, *see, e.g., Morgan,* 551 F.3d at 1262-63 (upholding district court's denial of employer's motion to decertify and finding that "there is nothing unfair about litigating a single corporate decision in a single collective action"); *Lindberg v. UHS*

*of Lakeside, LLC,* 761 F. Supp. 2d 752 (W.D. Tenn. 2011) ("It is clear that plaintiffs are similarly situated when they suffer from a single, FLSA violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs ... Plaintiffs may also meet the similarly situated requirement if they demonstrate, at a minimum, that 'their claims [are] unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct."); *Scott v. Heartland Home Finance, Inc.,* 2006 WL 1209813, *2 (N.D. Ga.) (holding the notice stage requires only "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan."); *Hill v. Muscogee County Sch. Dist.,* 2005 WL 3526669, *2 (M.D. Ga.) ("to show that they are similarly situated, plaintiffs may present allegations and evidence to show that defendant engaged in a unified policy, plan, or scheme of FLSA violations"). [4] Plaintiffs are not required to show that they hold identical positions. *Hipp,* 252 F.3d at 1217; *Grayson,* 79 F.3d at 1096.

In the Eleventh Circuit, a plaintiff must also demonstrate that there is a "reasonable basis" to believe that there are other employees who desire to opt-in. *Reyes v. AT&T Corp.*, 801 F. Supp. 2d 1350, 1356 (S.D. Fla. 2011). In making this showing, a plaintiff "may present evidence of other employees who desire to opt-in via affidavits, consents to join the lawsuit, or expert evidence of the existence of similarly-

---

[4] *See, e.g., Bell v. Mynt Entertainment, LLC*, 223 F.R.D. 680, 683 (S.D. Fla. 2004) (plaintiffs meet their burden by making substantial allegations supported by affidavits which successfully engage defendant's affidavits to the contrary, and demonstrate the existence of similarly situated employees who may desire to opt in to the action); *Carmody v. Fla. Ctr. for Recovery, Inc.*, 2006 WL 3666964, at *3 (S.D. Fla. Nov. 8, 2006) ("Hence, the Court will look to the filings, declarations, and affidavits on record to determine whether there are substantial allegations showing that the named Plaintiffs are similarly situated to the putative class members.").

situated employees." *Palacios v. Boehringer Ingelheim Pharm.*, 2011 WL 6794438, at *4 (S.D. Fla. April 19, 2011). Plaintiff's burden to show that there are other "potential opt-ins is not onerous." *Rojas v. Garda CL Southeast, Inc.,* 2013 WL 6834657, at *9 (S.D. Fla. Dec. 23, 2013).

Here, Plaintiffs meet their burden of proof under the lenient conditional certification standard. As explained herein, Plaintiffs' Complaint, Opt-in Plaintiff Cole who already joined the case, and the declarations submitted with this Memorandum, coupled with Defendant's uniform pay policies (and uniform job descriptions), satisfy the requisite burden of proof to certify a collective action and authorize notice. The declarations, more specifically, establish that Defendant employed uniform and company-wide pay practices for its hourly Agents and illustrate that Defendant ignored the law by refusing to pay its hourly Agents for all off-the-clock pre-shift work. (*See generally* Plaintiffs' Declarations). Likewise, the declarations illustrate that the Agents' off-the-clock time is significant, was required to perform Plaintiffs' job, and is not *de minimis*.[5]

Additionally, there is a "reasonable basis" to believe that there are other employees who desire to opt-in. Without notice, and in addition to the named Plaintiffs, Opt-in Plaintiff Cole has already filed his Consent to Join form and provided a declaration, **Exhibit E**, which sufficiently establishes that each of the putative opt-in plaintiffs are "similarly

---

[5] This is to the extent that the *de minimis* doctrine remains a valid legal defense after the Supreme Court decision in *Sandifer v. U.S. Steel Corp.*, 571 U.S. 220 (2014). Further, in *Peterson v. Nelnet Diversified Sols., LLC*, a 2021 call center matter with facts nearly identical to those here, the Tenth Circuit granted partial summary judgment in favor of the plaintiffs on the issues of compensability and the inapplicability of the *de minimis* doctrine. *Peterson*, 15 F.4th at 1049. The Court in *Peterson* held that the amount of time devoted to booting up and logging on – 2.27 minutes in that case – "is not so miniscule that it would be difficult to measure." *Id.* at 1043-1044.

situated" to the named Plaintiffs, that they all have similar (if not identical) job duties and pay (*see also*, **Ex. F**), and that they believe other Agents would join the case should they be made aware of it. Courts regularly find this to be a sufficient showing of interest. *See Pares v. Kendall Lakes Automotive, LLC*, 2013 WL 3279803, at *5 (S.D. Fla. June 27, 2013) ("the affidavits from the two other employees shows that at least two other co-workers desire to join the suit, thereby raising [Plaintiffs'] contention beyond one of pure speculation."); *Billingsley v. Citi Trends, Inc.*, 2013 WL 246115, at *2 (N.D. Ala. Jan. 23, 2013) ("Where consents to [participate in the] suit have already been filed district courts in the Eleventh Circuit have found that, for purposes of deciding a motion for conditional collective action certification, the already-filed consents to opt-in established that there were persons ... who would join in [the] suit if they had notice of the suit.). Accordingly, Plaintiffs have met their lenient burden of proof and this Court should immediately authorize issuance of the accompanying proposed form of Notice to all Agents who worked for Defendant at any time during the past three years.

### c. At the Notice Stage, Courts Do Not Evaluate the Merits, Make Credibility Determinations, or Consider Individual Defenses

In making the determination of whether a group of similarly situated individuals exists, the Court does not evaluate the merits of the case or "make determinations regarding the credibility of particular affiants." *Aiuto*, 2020 WL 2039946, at *5 (citing *Kreher v. City of Atlanta*, No. 1:04-CV-2651-WSD, 2006 WL 739572, at *4 (N.D. Ga. Mar. 20, 2006)). To do so at this juncture would place too high of a burden on the plaintiffs at the preliminary stage in the litigation because it would require them to "submit evidence of a highly particularized nature." *Kreher,* 2006 WL 739572, at *4.

Similarly, allegations that the parties' claims or defenses are too individualized does not preclude conditional certification. *See Riddle v. Suntrust Bank*, No. 1:08-cv-1411-RWS, 2009 WL 3148768, at *2–3 (N.D.Ga 2009) (finding that "variations in specific duties, job locations, working hours, or the availability of various defenses are examples of factual issues that are not considered at this stage" and "[t]he appropriate time to address issues of individual differences between putative class members and whether any particular individual is exempt is after the completion of discovery and during the second stage of the certification determination."); *Kreher,* 2006 WL 739572, at *4 n. 8 & 9 (N.D.Ga. Mar.20, 2006) (issues of individualized nature of employees' claims, although potentially meritorious, should be considered during second stage of analysis); *Clarke v. Convergys Customer Mgmt. Group, Inc.,* 370 F.Supp.2d 601, 607 (S.D.Tex.2005) (individualized factual issues should be considered during second-stage analysis, not initial "notice" stage); *Reab v. Electronic Arts, Inc.,* 214 F.R.D. 623, 627 (D.Colo.2002) (factors such as "disparate factual and employment settings of the individual plaintiffs" and "various defenses available to defendant which appear to be individual to each plaintiff" are considered during the second, and stricter, stage of the similarly-situated analysis).

## 2.    *Early Notice Protects Employees' Statutes of Limitations*

The statute of limitations for FLSA violations is two years, extended to three for willful violations, (which is pled in this case). 29 U.S.C. § 255(a). Accordingly, if notice is delayed, a great number of employees will lose their claims due to nothing more than the passage of time. District courts recognize the great prejudice that befalls employees when notice of a collective action is not issued in a timely fashion. *See Reed v. Starbucks Coffee*

16

*Company*, 2009 WL 10668193, at *1 (S.D. Fla. Apr. 24, 2009) ("[i]n a collective action, the individual opt-in plaintiff's claim is considered to have commenced at the time of filing the notice of consent…The Eleventh Circuit instructs that the deadlines demonstrate Congress' 'concern that an opt-in plaintiff should not be able to escape the statute of limitations bearing on his cause of action by claiming that the limitations period was tolled by the filing of the original complaint.'"); *Mills v. OK Sun Adams*, 2014 WL 1340758, at *1 (M.D. Ga. Apr. 3, 2014)("[O]pt-in plaintiffs are deemed to commence their civil action only when they file their written consent to opt into the class action…Therefore, an opt-in plaintiff 'must file his written consent to opt into the class action prior to the expiration of the statute of limitations on his [FLSA] claim.'")(citing *Grayson*, 79 F.3d at 1106-07); *LaFleur v. Dollar Tree Stores, Inc.*, 2012 WL 4739534, at *3 (E.D. Va. Oct. 2, 2012) ("Because the statute of limitations continues to run on unnamed class members' claims until they opt into the collective action . . . courts have concluded that the objectives to be served through a collective action justify the conditional certification of a class of putative plaintiffs early in a proceeding"). These decisions recognize that because most employees will not know about a collective action before receiving court-authorized notice, those employees cannot join the case until after that notice is sent and will have lost a large portion of their claim(s) by the time they do join.

The Supreme Court affirmed the importance of potential opt-in plaintiffs receiving timely notice of their potential claims:

> [N]otice to absent class members need not await a conclusive finding of similar situations. To impose such a requirement would condemn any large class claim . . . to a chicken-and-egg limbo in which the class could only notify all its members to gather together after it had gathered together all its members, and from which the class could escape only by refusing entry

after some unpublicized cutoff date to additional class members who thereafter stumble upon the case by themselves.

*Sperling v. Hoffman-LaRoche, Inc.*, 118 F.R.D. 392, 406 (D.N.J. 1988).

When courts delay in making a conditional certification determination, numerous FLSA violations may persist without redress due to nothing more than the running statute of limitations. Indeed, defendant employers could easily eliminate all FLSA exposure by simply running out the clock. Conversely, employees who lack meritorious claims or who are not ultimately found to be "similarly situated" to the named plaintiffs in a given case receive no structural advantage from early court facilitated notice. These employees still must prove their case on the merits, and they still must withstand a stage-two decertification analysis in order to proceed in the collective action. In sum, the only plausible purpose for delaying early notice is to foreclose the vindication of valid claims under the FLSA.

### 3.    *Stage Two: The Certification/Decertification Stage*

The second stage of certification process is "typically precipitated by a motion for 'decertification' by the defendant usually filed after discovery" and the matter is ready for trial. *Hipp*, 252 F.3d at 1218; *Morgan*, 551 F.3d at 1260. Based on a fully-developed record, the court makes an informed factual determination of whether the named plaintiffs and the opt-ins are similarly situated. *Hipp*, 252 F.3d at 1218; *Morgan*, 551 F.3d at 1261. The plaintiff has a heavier burden to show similarity at the second stage than at the first. *Morgan*, 551 F.3d at 1261.

### C.    Courts in the Eleventh Circuit Have Previously Granted Conditional Certification in Call Center Cases Based on Similar Proofs

As evidenced by the U.S. DOL's need to issue a fact sheet on this type of FLSA violation, the violation is a relatively common occurrence in the call center industry. Courts

in the Eleventh Circuit are familiar with the issue and frequently grant conditional certification based on proofs similar to those offered here. *See*, *Kie v. Ivox Sols., LLC*, 2016 WL 397606, at *1 (S.D. Fla. Feb. 2, 2016) (Granting conditional certification based on five affidavits for "all call-center and sales-agent employees of Defendant who are similarly situated and who worked for Defendant during the past three years."); *Randle v. Allconnect, Inc.*, 2014 WL 1795184, at *3 (N.D. Ga. May 6, 2014) (granting conditional certification of call center workers based on four affidavits); *Gonzalez v. TZ Ins. Sols., LLC*, 2014 WL 1248154, at *3-4 (M.D. Fla. Mar. 26, 2014) (granting conditional certification of call center workers based on three declarations).

### D. Plaintiffs' Proposed Notice Should be Approved

Plaintiffs' proposed long-form Notice is attached as **Exhibit A**. Notice is a FLSA plaintiff's communication with his co-workers, and, thus, "[a]bsent reasonable objections by either the defendant or the Court, plaintiffs should be allowed to use the language of their choice in drafting the notice." *Frykenberg v. Captain George's of South Carolina, LP*, 2020 WL 5757678, at *4 (D.S.C. Sept. 28, 2020)(quoting *Hose v. Henry Indus., Inc.*, 49 F. Supp. 906, 919 (D. Kan 2014), *order clarified by* 2014 WL 5510927 (D. Kan. Oct. 31, 2014)); *see also Ivery v. RMH Fran. Corp.*, 280 F. Supp. 3d 1121, 1139 (N.D. Ill. 2017) ("[A]lthough the Court has both the power and the duty to ensure that the notice is fair and accurate, that power should not be used to alter plaintiffs' proposed notice unless such alteration is necessary"). That being said, Plaintiffs' proposed Notice was fashioned

after notices that were approved in other FLSA collective actions.[6] Hence, this Court should approve Plaintiffs' proposed Notice and permit Plaintiffs' counsel to circulate the Notice by U.S. Mail, email, and text message.

### E.    Notice Should be Sent by Mail, Email and Text

Recognizing the reality of modern communication and its potential to advance the remedial goals of the FLSA, numerous courts, including those in this Circuit, have found it appropriate to distribute notice by way of e-mail in addition to mail. *See e.g.*, *Cooper v. E. Coast Assemblers, Inc.*, No. 12–80995–CIV, 2013 WL 308880, at *4 (S.D. Fla. Jan. 25, 2013) ("Plaintiff's counsel may e-mail the Notice in addition to its mailing."); *Palma v. Metropcs Wireless, Inc.*, No. 8:13–cv–698–T–33MAP, 2014 WL 235478 (M.D. Fla. Jan. 22, 2014) (citing *Stuven v. Texas De Brazil (Tampa) Corp.*, No. 8:12–CV–1283–T–24TGW, 2013 WL 610651 (M.D. Fla. Feb. 19, 2013); *Pogue v. Chisholm Energy Operating, LLC*, 2021 WL 5861184, at *9 (D.N.M. Dec. 10, 2021) (finding mail, email, and text message as appropriate methods for notice distribution); *Rapp v. HV Occupational Health Advisors of Am., LLC*, No. 20-cv-02043-PAB-KMT, 2021 WL 4426956, at *6 (D. Colo. Sept. 27, 2021) (permitting plaintiff to "send the Notice by First Class U.S. Mail and email to the last known address of each" putative class member); *German v. Holtzman Enter., Inc.*, No. 19-cv-03540-PAB-STV, 2021 WL 1087718, at *5 (D. Colo. Mar. 22, 2021) (ordering production of name, address, email address, and telephone number of putative collective members to ensure proper notice is given); *Phelps v. MC Commc'ns, Inc.*, 2:11–

---

[6] *See e.g., Beattie*, 2019 WL 2866559, at *2 ; *Gaffers v. Kelly Servs.*, No. 16-cv-10128 (E.D. Mich. 2016); *Williams v. Sykes, et al.*, No. 13-cv-946 (D. Minn. 2013); *Stelmachers v. Maxim Healthcare Services, Inc.*, No. 13-cv-01062 (N.D. Ga. 2013); *Lawrence v. Maxim Healthcare Services, Inc.*, No. 12-cv-2600 (N.D. Ohio 2012).

CV–00423–PMP–LRL, 2011 WL 3298414, at *6 (D. Nev. Aug. 1, 2011) ("The Court will permit Plaintiffs to e-mail the notice to those employees for whom Defendants have e-mail addresses, as well as send it by first class mail. E-mail is an efficient, reasonable, and low cost supplemental form of notice, particularly where Defendants may lack current physical mailing address information for its former employees."); *Varghese v. JP Morgan Chase & Co.*, Nos. 14 Civ. 1718 (PGG) & 15 Civ. 3023 (PGG), 2016 WL 4718413, at *9 (S.D.N.Y. Sept. 9, 2016) ("given the reality of communications today … email notice in addition to notice by first class mail is entirely appropriate"); *Atkinson v. TeleTech Holdings, Inc.,* No. 3:14–cv–253, 2015 WL 853234, at *5 (S.D. Ohio Feb. 26, 2015) (approving e-mail notice to call center employees, noting it "appears to be in line with the current nationwide trend," and that "it advances the remedial purpose of the FLSA").

In addition, given the importance and urgency of providing notice to class members of a pending FLSA case, the Court should permit distribution of notice via text message, as courts around the nation, including this Court, are becoming more inclined to do. *See Pogue¸* 2021 WL 5861184, at *9 (finding "mail, email, and text message" as appropriate methods for notice distribution"); *Beattie v. TTEC Healthcare Solutions, Inc.*, 2019 WL 2866559, at *2 (D. Colo. July 3, 2019) (permitting notice distribution via e-mail, text message and regular mail); *Calvillo v. Bull Rogers, Inc.*, 267 F. Supp. 3d 1307, 1315 (D.N.M. 2017) (noting the law regarding notice by email and text is on plaintiff's side, that courts have approved such methods in today's mobile society, and "that these methods of communication may offer a more reliable means of reaching an individual even if that individual is away from home or has moved."); *Irvine v. Destination Wild Dunes Mgmt.*, 132 F. Supp. 3d 707, 711 (D.S.C. 2015) (Noting "[t]he request that notice be distributed

via direct mail, email and text messaging" "eminently reasonable" and that "one's email address and cell phone number serv[e] as the most consistent and reliable method of communication" due to a much more mobile society).

Text message notice is especially appropriate in light of the turnover rate in the call center industry,[7] and has been approved by numerous courts, especially when, as here, such a turnover rate exists. *See Beattie*, 2019 WL 2866559, at *2 (permitting plaintiffs to "provide notice by e-mail and text message as well as by regular mail"); *Desio v. Russell Rd. Food and Bev., LLC*, 2017 WL 4349220, at *5 (D. Nev. Sept. 29, 2017) ("due to the transient nature of dancers, contact via text messages does not seem 'unnecessary and redundant.'"); *Bhumithanarn v. 22 Noodle Market Corp.*, 2015 WL 4240985, at *5 (S.D.N.Y. July 13, 2015) (noting notice distribution via text message "is likely to be a viable and efficient means of communicating with many prospective members of this collective action" given the high turnover characteristic of the restaurant industry). Proposed Text Message Notice is attached as **Exhibit B**.

### F.    This Court Should Grant a Sixty (60) Day Opt-in Period for Additional Plaintiffs to Join this Litigation And for Reminder Notice to Be Issued to Those Who Have Not Yet Responded

Plaintiffs request that the Court approve a 60-day opt-in period and allow Plaintiffs to issue one reminder email thirty (30) days into the notice period to those who have not yet responded to the initial opt-in notice. Courts commonly approve reminders, particularly

---

[7]   Turnover rates for the call center industry range between 30-45%. (*http://qatc.org/winter-2015-connection/exploring-call-center-turnover-numbers/* (last visited Apr. 25, 2022).

given the fact that the COVID-19 pandemic has created barriers to communication with

collective members.[8]

## IV.    <u>CONCLUSION</u>

For the reasons explained above, Plaintiffs respectfully request that the Court,

pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b), enter an order:

> (1)    Conditionally certifying the proposed FLSA Collective;
>
> (2)    requiring Defendant to identify all putative collective members by providing a list of their names, last known addresses, dates and location of employment, phone numbers, and email addresses in electronic and importable format within ten (10) days of the entry of the order;
>
> (3)    Authorizing Plaintiffs' proposed form of notice (**Exhibits A** & **B**) and implementing a procedure whereby the notice of Plaintiffs' FLSA claims is sent (via U.S. Mail, email, and text message) to:
>
> *All similarly situated current and former hourly customer service agents who worked for Defendant at any time during the last three years* (the "FLSA Collective").
>
> (4)    Appointing the undersigned counsel as counsel for the FLSA Collective; and
>
> (5)    Giving members of the FLSA Collective sixty (60) days to join this case, measured from the date the Court-approved Notice is sent, with one reminder email sent thirty (30) days thereafter to anyone who did not respond.

Dated: December 13, 2024                    Respectfully Submitted,

---

[8] *See Troxel v. Gunite Pros, LLC,* No. 21-0057-WS-N, 2022 WL 37525, at *6 (S.D. Ala. Jan. 4, 2022)*; Benjamin v. Right Path Behavioral Health Servs., LLC*, No. 3:17-CV-457-J-39MCR, 2018 WL 922350, at *3 (M.D. Fla. Feb. 7, 2018) (Davis, J.); *Robertson v. REP Processing, LLC*, 2021 WL 4255027, at *4 (D. Colo. Sept. 16, 2021) (finding a reminder warranted because plaintiff argued that the pandemic has created barriers to communication with collective members); *Pogue*, 2021 WL 5861184, at *9; *German*, 2021 WL 1087718, at *4; *Ortez v. United Parcel Serv., Inc.*, 2018 WL 4328170, at *3 (D. Colo. Sept. 11, 2018); *Deatrick v. Securitas Sec. Servs. USA, Inc.*, No. 13–cv–05016–JST, 2014 WL 5358723 (N.D. Cal. Oct. 20, 2014).

/s/ Jason J. Thompson
Jason J. Thompson (admitted pro hac vice)
Albert J. Asciutto (admitted pro hac vice)
SOMMERS SCHWARTZ, P.C.
One Towne Square, 17th Floor
Southfield, Michigan 48076
Phone: (248) 355-0300
Email: jthompson@sommerspc.com
Email: aasciutto@sommerspc.com

Bradley W. Butcher, Esq.
BUTCHER & ASSOCIATES
6830 Porto Fino Circle, Suite 2
Fort Meyers, Florida 33912
(239) 322-1615
bwb@b-a-law.com

*Attorneys for Plaintiff, the FLSA Collective, and the Putative Class*

## CERTIFICATE OF SERVICE

I certify that on December 13, 2024, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send notification of such filing to all counsel of record.

/s/ Jason J. Thompson
Jason J. Thompson

24